UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| THOMAS ROUSE, JR., | Civil Action No.: 4:10-cv-2275-RBH-TER |
| Plaintiff, | |
| -vs- | |
| | **REPORT AND RECOMMENDATION** |
| FEDERAL EXPRESS, | |
| Defendant. | |

## I. INTRODUCTION

In this action, Plaintiff brings claims of discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. Presently before the Court is Defendant's Motion for Summary Judgment (Document #54). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

## II. FACTS

Plaintiff is an African-American male with a speech impediment. Plaintiff was employed as a Courier with Defendant from 1998 to 2008. While Plaintiff was employed at FedEx, he received a FedEx Employee Handbook that contained FedEx's Acceptable Conduct Policy 2-5, which read as follows:

> While any violation of the Acceptable Conduct policy could potentially result in termination of employment, an employee normally will be dismissed upon completion of an investigation confirming violations related to Deliberate

> falsification of Company documents including but not limited to business reports, delivery records, timecards, benefits eligibility forms, expense reports and employment applications.

Exhibit 4 to Plaintiff's Deposition (Plaintiff Responses to Requests for Admission # 21, 22). Plaintiff concedes that, as of September 1, 2004, he knew that falsifying a FedEx document was a "Discharge Offense" and a violation of FedEx's Acceptable Conduct policy that would lead to termination of employment. Plaintiff's Depo., p. 275, ln. 9 – p. 276, ln. 5.

Plaintiff received an inter-office memorandum dated September 30, 2004 from Senior Manager, Richard Hooss, which Plaintiff signed. However, he indicates that he did not read the memorandum before he signed it. Plaintiff Dep. p. 275, ln. 3 - 8. This memorandum set forth FedEx's Acceptable Conduct policy that deliberate falsification of Company documents is a "Discharge Offense" that would lead to termination of employment. Plaintiff's Depo., pg. 274, ln. 13 – 19; Exhibit 17 to Plaintiff's Depo.

Plaintiff received an inter-office memorandum from Southern Region Vice President, Ted Merida, dated February 11, 2005 that he signed and dated on February 15, 2005. This memorandum set forth FedEx's Acceptable Conduct policy that deliberate falsification of Company documents was a "Discharge Offense". Plaintiff's signature is below an affirmation that reads as follows: "I have read this carefully and understand the seriousness and consequences if I violate this policy." Plaintiff indicates that he probably did not read the document before signing it. Plaintiff's Depo., pg. 277, ln. 3 – pg. 278, ln. 25; Exhibit 18 to Plaintiff's Declaration. The inter-office memorandum dated February 11, 2005 that Plaintiff signed reads as follows: "In accordance with the above-quoted policy, which specifies discharge/dismissal for falsification–related violations, there is and will be zero tolerance for this type of behavior." Plaintiff understood "zero tolerance" to mean "no

mistakes" and "under no circumstances". Plaintiff's Depo., pg. 279, ln. 1 – 11; Exhibit 18 to Plaintiff's Deposition. Plaintiff concedes that, as of February 15, 2005, he knew that falsifying a FedEx document was a "Discharge Offense" that would lead to termination of employment. Plaintiff's Depo., pg. 277, ln. 22 – 25.

Plaintiff received an inter-office memorandum dated August 25, 2005, from Southern Region Vice President, Ted Merida, which Plaintiff signed and dated September 6, 2005. Plaintiff's signature is below the following affirmation: "I have read and understand the contents of this memorandum." Plaintiff did not read the memorandum before signing it. Plaintiff's Depo., pg. 280, ln. 18 – pg. 282, ln. 8; Exhibit 19 to Plaintiff's Deposition. The inter-office memorandum dated August 25, 2005, reads as follows:

> Six months ago, we all acknowledged understanding that falsification of Company documents would result in termination. Unfortunately, too many of our team members have continued to lose their jobs because they made unwise decisions to enter false information on some delivery record or timecard. The consequence of falsifying a document is termination, but the consequence of a performance mistake depends on the circumstances and your related discipline history. Your management team is charged with the responsibility of looking at each action. A wide range of options is available to management from a counseling up to termination (as a last resort). However, in cases involving falsification, your management team has <u>NO</u> discretion or ability to deviate from the action required by policy, regardless of your tenure, past performance or conduct history, whether you personally gained from your actions, or whether your intentions were to serve the customer.

Exhibit 19 to Plaintiff's Deposition. Plaintiff concedes that the inter-office memorandum dated August 25, 2005, that he signed put him on notice that some FedEx employees were losing their jobs because they entered false information on delivery records. Plaintiff's Depo., pg. 282, ln. 9 – 24.

Plaintiff received an inter-office memorandum that he signed and dated March 7, 2008. Plaintiff's signature is right below an affirmation that reads as follows: "I have read and acknowledge the receipt of this letter by my signature below." Plaintiff concedes that he "glanced over" this memorandum before he signed it. Plaintiff's Depo., pg. 294, ln. 19 – pg. 295, ln. 15; Exhibit 20 to Plaintiff's Depo. The inter-office memorandum that Plaintiff signed on March 7, 2008, specifies that FedEx has a "ZERO TOLERANCE" policy against falsifying a delivery record. Plaintiff's Depo., pg. 294, ln. 19 – pg. 295, ln. 15; Exhibit 20 to Plaintiff's Depo.

When Plaintiff was a Courier at FedEx, there were instances when he electronically released packages in his Power Pad before he actually arrived at the customer's location and delivered the package. This is falsification of a FedEx document and is a violation of FedEx policy. Plaintiff's Depo., pg. 212, ln. 17 – 21; Dominic DiPalma's Declaration, ¶ 4. However, Plaintiff maintains that he did so at the direction of his manager and was told he would suffer no repercussions. Plaintiff's Dep. p. 285, ln. 11- p. 288, ln. 21, p. 294, ln. 8 - 18; p. 296, ln. 22 - p. 298, ln. 4. Karen Wilson, a Fed Ex employee, avers "I also was told about a release number to use if I got behind on my delivery time especially a.m. packages, which were like critical deliveries. This saved the company a lot of revenue and our station got reconized [sic] and rewarded with paid breakfast, cookouts and a inperson [sic] meeting by our District Manager." Wilson Affidavit (attached as an Exhibit to Plaintiff's Response).[1]

---

[1] Plaintiff also submits the Affidavit of Alonzo Stevens, Jr. who avers, "I was require to put in POD write in break." Stevens Affidavit (attached as an Exhibit to Plaintiff's Response). Presumably, Stevens is a current or former employee of Defendant although he does not identify himself as such in his Affidavit. The meaning behind Stevens' statement is unclear, but Plaintiff offers his Affidavit as evidence that there was an accepted, unwritten policy of falsifying documents.

Plaintiff's Termination Letter states that he was terminated because, on August 19, 2008, he inaccurately recorded his stop time and location on his delivery manifests by releasing packages before he arrived at the customer's location. Plaintiff admits that he did what is stated in his Termination Letter. Plaintiff's Depo., pg. 233, ln. 11 – pg. 234, ln. 19. Plaintiff admits that it was "bad judgment" to release a package before he actually delivered it. Plaintiff's Depo., pg. 237, ln. 17 – 20; pg. 248, ln. 11 - 21.

Marvin Coakley is an African-American Operations Manager at the Florence station. Coakley initiated and conducted the investigation that ultimately led to Plaintiff's termination and was involved in the actual termination. Plaintiff's Deposition, pg. 30, ln. 13 – pg. 31, ln. 11; Marvin Coakley's Declaration, ¶ 1, 2, 3. During the investigation, Plaintiff told Coakley and Dominic DiPalma that he entered a release number in his power pad that indicated that he had delivered packages to the customer when, if fact, he had not arrived at the customer's location to deliver them. Plaintiff told them that he did this because he did not want to be responsible for any service failures. Marvin Coakley's Declaration, ¶ 3; Plaintiff's Depo., pg. 261, ln. 12 – 25. During the investigation, Plaintiff submitted an 8 page handwritten statement to his manager. Plaintiff's handwritten statement reads as follows, verbatim: "It true that I release a pkg a little bit before I got there but that was with the customer under stand. These actions was inexcusable and unjustified, but I didn't do anything deliberate or for personal gain. I just had a lack in judgement which won't happen again." In this same handwritten statement, Plaintiff admits the following: "I made a bad judgement in releasing those pkgs under C. Workman." Plaintiff's Depo., pg. 236, ln. 13 – 23; Exhibit 13 to Plaintiff's Depo. Plaintiff agrees that he should have received some form of discipline for his actions on August 19, 2008, but he suggests that he be issued a warning letter with a one-year

probationary period instead of termination. Plaintiff's Depo., pg. 248, ln. 22 – pg. 249, ln. 19; Exhibit 13 to Plaintiff's Depo. Plaintiff's termination was effective August 21, 2008.

Plaintiff filed his Charge of Discrimination on March 25, 2009, alleging discrimination based upon race and disability. Exhibit 2 to Plaintiff's Dep.

### III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

### A. Race Discrimination

Title VII makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions or privileges of employment on the basis of race. 42 U.S.C. § 2000e-2(a). In the absence of direct evidence of discrimination, courts apply the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[2] Under the McDonnell Douglas framework, Plaintiff has the initial burden of establishing a prima facie case of discrimination. To establish a prima facie case of racial discrimination, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) that similarly-situated employees outside the protected class received more favorable treatment. White v. BFI Waste Services, LLC, 375 F.3d 288, 295 (4th Cir. 2004). The fourth element can also be established by presenting evidence raising an inference of

---

[2] The McDonnell Douglas analysis was refined in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

discrimination. See Miles v. Dell, Inc., 429 F.3d 480, 486-87 (4th Cir.2005); EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 n. 2 (4th Cir.2001) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the disparate treatment. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons, but was pretext for discrimination. Reeves, 530 U.S. at 143. Throughout the burden shifting scheme set forth in McDonnell Douglas, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against him.

Defendant argues that Plaintiff cannot establish a prima facie case of race discrimination for two reasons: (1) he cannot show that he was performing at an acceptable level at the time of his termination (2) nor has he identified any similarly situated employees outside his protected class who were treated more favorably. As an African-American, Plaintiff is a member of a protected class and he suffered an adverse employment action when his employment was terminated. Thus, Plaintiff

establishes prongs (1) and (3).

In assessing whether an employee was performing his duties to a satisfactory level, prong (2), "[i]t is the perception of the decision maker which is relevant." Johnson v. Mechs. & Farmers Bank, 309 Fed. Appx. 675, 683 (4th Cir.2009) (quoting Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir.2003). For a plaintiff to establish that she was meeting her employer's expectations she can provide evidence of one of the following: (1) employer concessions that the employee was performing satisfactorily at the time of discharge, (2) evidence that the employer had previously given the employee positive performance reviews or (3) qualified expert opinion testimony as to the employer's legitimate job performance expectations and an analysis and evaluation of plaintiff's performance in light of those expectations. King v. Rumsfeld, 328 F.3d 145, 149-150 (4th Cir.), cert. denied, 540 U.S. 1073, 124 S.Ct. 922, 157 L.Ed.2d 742 (2003).

Defendant argues that it is undisputed that Plaintiff falsified FedEx delivery records by entering a release number in his power pad for packages, thereby indicating he had delivered the packages, when he had not yet arrived at the customer location to deliver them. Plaintiff argues that, up until the falsification incident, Plaintiff's job performance met his employer's legitimate expectations because it is undisputed that Plaintiff was under no threat of termination. However, the relevant time to evaluate the an employee's performance is at the time of the adverse action. See, e.g, Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir.2005)(stating that the third factor of a prima facie case includes that "she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action"). Plaintiff concedes that he falsified records but asserts that he did so at the direction of his manager. Whether or not this creates an issue of fact, it is clear, as discussed below, that Plaintiff fails on the fourth prong of the prima facie framework.

Plaintiff fails to present sufficient evidence to show that other employees outside the protected class were disciplined less harshly for falsifying documents or any other dischargable offense. In his Response, Plaintiff names Mike Cross and Todd Mosley as two white employees who also falsified documents but were not terminated. However, Plaintiff fails to present evidence that these individuals ever falsified a FedEx document. For instance, when Plaintiff was asked the basis of his allegation that Cross ever falsified a FedEx document, Plaintiff testified as follows:

> Q. So if you give me a second. Let me summarize and that'll help to go quicker. Okay. You have no firsthand knowledge that Mike Cross falsified any documents, do you?
> A. No.
> Q. Okay. And you say you never discussed this with Michael Cross; correct?
> A. Correct.
> Q. And you never discussed it with the customer.
> A. Correct.

Plaintiff's Depo., p. 102, ln. 14 – 23. Plaintiff asserts that the basis of his allegation that Cross falsified FedEx documents stems from what another FedEx employee, Ruthy Legette, allegedly told him. Legette admits that she never had any firsthand knowledge that Cross falsified any FedEx document and that she only learned of this rumor through hearsay. Legette Declaration ¶ 3 (attached as Ex. 10 to Defendant's Motion).

Additionally, Plaintiff testified he has no first hand knowledge of whether Todd Mosely falsified documents:

> Q. All right. And your - - your knowledge of this incident involving Todd Mosley is all hearsay; is that right?
> A. Uh-huh.
> Q. You have to say "yes" or "no".
> A. Oh, yes.
> Q. You have no firsthand knowledge about this incident at all; is that right?
> A. Yes.

Plaintiff Depo., p. 121, ln. 18 – p. 122, ln. 1. "Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment." Eady v. Veolia Transportation Services, Inc., 609 F.

Supp. 2d 540, 551 (D. S.C. 2009); see also Evans v. Technologies Applications & Servs. Co., 80 F.3d 954, 962 (4th Cir. 1996). Furthermore, both Cross and Mosley deny that they ever falsified any FedEx documents. Cross Declaration ¶ 3 (attached as Ex. 5 to Defendant's Motion); Mosley Declaration ¶ 3 (attached as Ex. 12 to Defendant's Motion).

Plaintiff also asserts that his position was filled by Mark Bronson, a white male. In appropriate circumstances, the fourth prong of a prima facie case of discrimination can be met by showing that position was filled by a similarly qualified individual outside the protected class. See Miles, 429 F.3d at 486. However, in the present case, Bronson was an existing employee of Defendant who assumed some of Plaintiff's job responsibilities after Plaintiff's employment was terminated. Bronson Dep. p. 66, ln. 14 - 20. Courts uniformly recognize that "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement" sufficient to establish a prima facie case of discrimination. Lilley v. BTM Corp., 958 F.2d 746, 752 (6th Cir. 1992) (finding that the plaintiff was not replaced where, after he was terminated, his duties and accounts were assumed by the defendant's remaining sales staff); Frieze v. Boatmen's Bank of Belton, 950 F.2d 538, 540 (8th Cir. 1991) ("Employers often distribute a discharged employee's duties to other employees performing related work for legitimate reasons. Boatmen's distributing Frieze's work to other members of the loan department does not increase or decrease the likelihood that Boatmen's discharged Frieze because of his age."); Culwell v. City of Fort Worth, 503 F. Supp. 2d 813, 817 (N.D. Tex. 2007) ("Transfer of work by a terminated employee to other employees does not constitute 'replacement' in an employment discrimination context."); Roper v. Exxon Corp., 27 F. Supp. 2d 679, 682 (E.D. La. 1998) ("[T]he transfer of work to other employees or outside contractors upon termination does not constitute 'replacement' for purposes of the ADEA."). Therefore, the fact that Plaintiff's job responsibilities were reassigned to a white employee is insufficient to satisfy the fourth

prong of the prima facie case for race discrimination.

Plaintiff also fails to present any other evidence that would raise an inference of race discrimination. In fact, in his deposition, Plaintiff indicates that he did not agree that he was discriminated against on the basis of race. Plaintiff testified that he did not check the box on his Charge of Discrimination that he was discriminated on the basis of race. Rather, he indicates that someone with the EEOC completed the form for him. Plaintiff's Depo., pg. 298, ln. 22 – pg. 299, ln. 11. As such, Plaintiff fails to establish a prima facie case of race discrimination and summary judgment is appropriate on this cause of action.

Even assuming, arguendo, Plaintiff has presented sufficient evidence to show a prima facie case of race discrimination, Defendant has presented a legitimate, non-discriminatory reason for Plaintiff's termination and Plaintiff has failed to show that the given reason is pretext for a discriminatory reason. Defendant had a zero-tolerance policy for falsification of documents and Plaintiff was made aware of this policy on numerous occasions. Plaintiff violated Defendant's policy when he admittedly indicated in Defendant's system that he had delivered a package even though he had not yet arrived at the delivery location.

Plaintiff argues that the reason given for his termination was pretext for a discriminatory reason because "there was an accepted unwritten policy of using a certain release number if they were behind on delivery times and putting in POD and writing in breaks." Plaintiff's Response p. 7. Karen Wilson, a Fed Ex employee, avers "I also was told about a release number to use if I got behind on my delivery time especially a.m. packages, which were like critical deliveries." Wilson Affidavit

(attached as an Exhibit to Plaintiff's Response).[3] However, Defendant submits the deposition testimony and declarations of numerous FedEx employees, who aver that it was widely understood throughout the Florence office that releasing a package before arriving at a customer's location was a policy violation that would lead to termination. Bronson Dep., p. 27, ln. 19 – p. 28, ln. 12; p. 29, ln. 7 – 18; Nancy Blue Declaration ¶ 5 (attached as Ex. 3 to Defendant's Motion); Marvin Coakley Declaration ¶ 6, 8 (attached as Ex. 4 to Defendant's Motion); Mike Cross Declaration ¶ 7 (attached as Ex. 5 to Defendant Motion); Dominic DiPalma Declaration ¶ 4 (attached as Ex. 6 to Defendant's Motion); Reginald Fisher Declaration ¶ 8 (attached as Ex. 7 to Defendant's Motion); Chad Hewitt Declaration ¶ 7 (attached as Ex. 8 to Defendant's Motion); Ruthy Legett Declaration ¶ 8 (attached as Ex. 10 to Defendant's Motion); Willie Moore Declaration ¶ 5 (attached as Ex. 11 to Defendant's Motion); Todd Mosley Declaration ¶ 5 (attached as Ex. 12 to Defendant's Motion); Jerome Thomas Declaration ¶ 5 (attached as Ex. 13 to Defendant's Motion); Paul Rowe Declaration ¶ 3 (attached as Ex. 14 to Defendant's Motion); Leonard Young Declaration ¶ 6 (attached as Ex. 15 to Defendant's Motion). Even viewing the facts in the light most favorable to Plaintiff, he fails to show that he was terminated because of his race.

In sum, Plaintiff's evidence is insufficient to show that the reason given for Plaintiff's termination was not the true reason but pretext for a discriminatory reason. It is not necessary for this court to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for Defendant's decision. Hawkins v. Pepsico, 203 F.3d 274, 279 (4th Cir.2000). "Proof that

---

[3] Plaintiff also submits the Affidavit of Alonzo Stevens, Jr. who avers, "I was require to put in POD write in break." Stevens Affidavit (attached as an Exhibit to Plaintiff's Response). Presumably, Stevens is a current or former employee of Defendant although he does not identify himself as such in his Affidavit. The meaning behind Stevens' statement is unclear, but Plaintiff offers his Affidavit as evidence that there was an accepted, unwritten policy of falsifying documents.

the employer's proffered reasons are unpersuasive, or even obviously contrived, ... does not necessarily establish that [Plaintiff's] proffered reason is correct. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 146–47, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "It is not enough to disbelieve the [employer]." Love–Lane v. Martin, 355 F.3d 766, 788 (4th Cir.2004). Plaintiff must show that a reasonable jury could believe her explanation of intentional discrimination. Id. Because Plaintiff has failed to do so, summary judgment is appropriate on his race discrimination claim.

### B. Disability Discrimination

Plaintiff also claims that Defendant terminated him because of his speech impediment in violation of the ADA. The ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

The Fourth Circuit has held that McDonnell-Douglas burden-shifting standards set forth above are also applicable in cases brought pursuant to the ADA "where the defendant disavows any reliance on discriminatory reasons for its adverse employment action." Ennis v. Nat'l Assoc. Of Business and Educ. Radio, 53 F.3d 55, 58 (4th Cir.1995). Thus, to establish a prima facie case of discriminatory discharge under the ADA, a plaintiff must show that (1) he was a "qualified individual with a disability"; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination. Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir.2001).

For the same reasons discussed with respect to Plaintiff's race discrimination claim, Plaintiff fails to present sufficient evidence to establish a prima facie case of discrimination under the ADA.

Plaintiff fails to present sufficient, non-hearsay evidence that other, non-disabled employees engaged in the same behavior but were not terminated.

However, Plaintiff's ADA claim fails at the prima facie stage for the additional reason that Plaintiff fails to show he is a qualified individual with a disability. The ADA defines "disability" as a physical or mental impairment that substantially limits one or more of the major life activities of an individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C.A. § 12102(2). Plaintiff does not argue that he has an impairment that substantially limits a major life activity but that Defendant regarded Plaintiff as having such an impairment.

An individual is regarded as being disabled if he is regarded or perceived, albeit erroneously, as having an impairment that substantially limits one or more of his major life activities. 42 U.S.C.A. § 12102(2). An employee may be "regarded as" disabled under the ADA if either "(1) a covered entity mistakenly believes that [the employee] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The fact that an employer is aware of an employee's impairment, without more, is "insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action." Haulbrook v. Michelin North America, 252 F.3d 696, 703 (4th Cir. 2001) (citing Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir.1996)). "Proof limited to mere speculation and inferences that an employer believes an employee to be disabled is insufficient to avoid summary judgment." Csicsmann v. Sallada, No. 05-2087, 211 Fed.Appx 163, 167 (4th Cir. 2006) (citing Haulbrook, 252 F.3d at 704).

Plaintiff asserts that his speech impediment is obvious. He further points to evidence that management gave him used uniforms, laughed when a customer asked that Plaintiff not make anymore

deliveries to her home, required him to run full-time routes on part-time pay, and advanced other employees ahead of Plaintiff even though Plaintiff had trained those employees. Stephens Affidavit, Wilson Affidavit, Gripper Affidavit (all attached as Exhibits to Plaintiff's Response). Plaintiff argues that this evidence reveals that Defendant regarded Plaintiff as having an impairment that substantially limited one or more major life activities. However, Plaintiff fails to present evidence sufficient to show that these working conditions somehow related to his speech impediment or that Defendant believed that the speech impediment substantially limited one or more of Plaintiff's major life activities. In his deposition, Plaintiff testifies that he had only one discussion with any of his managers with respect to his speech impediment:

> Q. You never had a discussion with anybody at FedEx about you having a disability, did you?
> A. I think Marvin asked me one time about my speech, you know.
> Q. What did he ask you?
> A. You know, he, you know. I think he asked me how long I had - - had a speech impediment. I told him ever since I was young so I can't - - but other than that, there wasn't no really - - no big issue.
> Q. Okay. So that was the only conversation you had with anybody at FedEx about your - - your speech; is that accurate?
> A. Uh-Huh.
> Q. You have to say "yes".
> A. Oh, yes.

Plaintiff Dep. p. 161, ln. 21 - p. 162, ln. 10. The only way that Plaintiff's speech impediment affected his job at FedEx was that occasionally customers would ask him to repeat himself. Plaintiff's Depo., pg. 167, ln. 24 – pg. 168, ln. 6. Plaintiff was employed by Defendant for ten years and Plaintiff admits that he has no first-hand knowledge that any FedEx manager was trying to terminate his employment because of his speech impediment, and that his claim is not based upon anything that he saw or heard, but instead it is simply a "feeling" that he has. Plaintiff Dep. p. 173, ln. 14 - p. 175, ln. 10. Plaintiff testifies that he had that "feeling" because Todd Mosley and Marvin Coakley asked him

to repeat himself at times because he was not clear. Plaintiff Dep. p. 175, ln. 11 - 22. Plaintiff's feeling is insufficient to show that Defendant regarded him as having a disability. See McClinton v. F. Schumacher & Co., No 04-738-22, 2004 WL 3591132, * 5 (D.S.C. Dec. 13, 2004) ("Such a belief on the part of Plaintiff, no matter how sincere or heart felt, is simply not evidence to support an ADA claim.").

Because Plaintiff has failed to present sufficient evidence to show that he falls within the ADA's protected class or present any evidence that would give rise to an inference of discrimination, Plaintiff fails to establish a prima facie case of discrimination in violation of the ADA. Nevertheless, even assuming, arguendo, he has established a prima facie case, as discussed above, Plaintiff has not presented evidence sufficient to show that Defendant's legitimate nondiscriminatory reason for his termination was pretext. That is, when viewing the evidence in the light most favorable to Plaintiff, he has failed to show that his admitted entry of false information, indicating that he had delivered a package when he had not, was not the true reason for discrimination but was pretext for a discriminatory reason based upon his speech impediment. Furthermore, no reasonable juror could conclude based upon the evidence presented that Plaintiff's termination was based on any perceived disability. Therefore, summary judgment is appropriate on Plaintiff's claim of discrimination in violation of the ADA.

## V. CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document #54) be granted and this case be dismissed in its entirety.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

June 22, 2012  
Florence, South Carolina

**The parties are directed to the important information on the following page.**