IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Thomas Rouse, Jr., | ) | Civil Action No.: 4:10-cv-2275-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Federal Express, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Thomas Rouse, Jr. ("Plaintiff") filed the above action against Defendant Federal Express ("Defendant"), his employer, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §§ 2000e–2000e-17 (West 2012), and the Americans with Disabilities Act ("ADA"), 42 U.S.C §§ 12101–12213 (West 2012). [*See* Compl., Doc. # 1; Pl.'s Resp., Doc. # 62, at 2.]

On November 18, 2011, Defendant filed its Motion for Summary Judgment, along with a memorandum in support. [Defs.' Mot., Doc. # 54.] Plaintiff filed his Response on November 23, 2011 [Pl.'s Resp., Doc. # 62], to which Defendant filed a Reply [Def.'s Reply, Doc. # 63].

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Thomas E. Rogers, III.[1] [R&R, Doc. # 73.] In the R&R, the magistrate recommends that the Court grant Defendant's Motion for Summary Judgment and dismiss this case in its entirety. Plaintiff timely filed Objections to the R&R on July 9, 2012 [Obj., Doc. # 74], to which Defendant replied on July 19, 2012 [Reply to Obj., Doc. # 76].

For the following reasons, this Court adopts the magistrate's recommendation.

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Rogers for pretrial handling.

**Background**

Plaintiff, an African American male with a speech impediment, was employed by Defendant from 1998 to 2008, when he was terminated for falsification of company documents – an act prohibited by Defendant's Acceptable Conduct Policy. [*See* Pl.'s Resp., Doc. # 62, at 2.] On at least four occasions, Plaintiff signed a memorandum indicating that he had read and understood the Acceptable Conduct Policy. [*See* R&R, Doc. # 73, at 1–4 (citing instances throughout the record).] These memoranda indicated that falsifying company documents would lead to termination, and that Defendant maintained a "zero tolerance" policy with regard to falsification. [*Id.*; Pl.'s Resp., Doc. # 62, at 2.]

It is undisputed that while Plaintiff was a courier for Defendant, he falsified company documents – that is, he submitted electronic documentation indicating that a package had been delivered when, in fact, he had not been to the customer's location and had not delivered the package. [*See* Obj., Doc. # 74, at 1.] According to Defendant, this conduct is the reason it terminated plaintiff. [Termination Ltr., Doc. # 54-16, at 1.]

Plaintiff admits to violating the Acceptable Conduct Policy as discussed in his termination letter, and concedes that it was "bad judgment" to release packages before he actually delivered them. [*See* Obj., Doc. # 74, at 1; Pl.'s Dep., Doc. # 54-3, at 233:11–234:25, 237:17–20, 248:11–21.] However, Plaintiff maintains that "it is clear that there was an accepted unwritten policy of" falsifying company documents by allowing packages to be electronically released if the couriers were behind on delivery times. [Obj., Doc. # 74, at 1–2.] Plaintiff agrees that he should have received some form of discipline for falsifying company documents, but he suggests that he should have been issued a warning letter instead of termination. [*See* Pl.'s Dep., Doc. # 54-3, at

248:22–249:19; Pl.'s Statement, Doc. #54-17, at 5.] Plaintiff claims that his termination was actually a result of discrimination on the basis of his race and speech impediment. [Pl.'s Charge, Doc. # 54-6.]

## Standard of Review

The magistrate judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) ("*[D]e novo* review [is] unnecessary in . . . situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation."). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310 (4th Cir.2005). Furthermore, in the absence of specific objections to the R&R, this Court is not required to give any explanation for adopting the recommendation. *See Diamond*, 416 F.3d at 315; *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

**Discussion**

Plaintiff objects to the magistrate's findings relating to both his Title VII and ADA claims. The Court will address the objections as they relate to each claim.

**I.    Title VII**

Because Plaintiff has not presented any direct evidence of race discrimination, he proceeds under the indirect evidence burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that burden-shifting scheme, Plaintiff has the initial burden to establish a *prima facie* case of race discrimination, by showing that "(1) [ ]he is a member of a protected class; (2)[ ]he suffered adverse employment action; (3)[ ]he was performing h[is] job duties at a level that met h[is] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). If Plaintiff succeeds in establishing his *prima facie* case, the burden then shifts to Defendant to produce "a legitimate, nondiscriminatory reason for the adverse employment action." *Id*. Assuming Defendant meets its burden of production, "the burden shifts back to [ ][P]laintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.' " *Id*. (quoting *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 143 (2000)).

In his Objections, Plaintiff first contends that the magistrate judge erred in finding that Plaintiff had failed to establish a *prima facie* case of discrimination. [*See* Obj., Doc. # 74, at 3–4.] Specifically, Plaintiff objects to the magistrate's holding that he failed to show the fourth prong of

his *prima facie* case:[2] that the position remained open or was filled by similarly qualified applicants outside the protected class. [*Id*.] The Court overrules this objection.[3]

Plaintiff argued that his position was filled by Mark Bronson, a white male who was already employed by Defendant. [Obj., Doc. # 74, at 7.] However, the magistrate explained that because Plaintiff's duties were spread among remaining employees, one of whom was Mr. Bronson, this reassignment did not constitute replacement sufficient to establish a *prima facie* case of discrimination. [R&R, Doc. # 73, at 11.] Plaintiff does not object to the magistrate's recitation of the applicable law. Although the Fourth Circuit does not appear to have addressed this precise issue, the magistrate correctly held that courts uniformly recognize that spreading the former duties of a terminated employee among the remaining employees does not constitute replacement. [*See* R&R, Doc. # 73, at 11 (citing cases).] *See also Webb v. ServiceMaster BSC LLC*, 438 Fed. App'x 451, 454 (6th Cir. 2011).

However, Plaintiff claims the magistrate erred by finding that Plaintiff's duties were spread among remaining employees. The Court finds this claim to be without merit. Plaintiff himself states that "Mark Bronson assumed Plaintiff's route, and it was made easier for him by lightening his

---

[2] It is undisputed that Plaintiff is a member of a protected class and that he suffered an adverse employment action. [*See* Def.'s Mot., Doc. # 54-1, at 18, 24.] In the R&R, the magistrate discussed, but did not make a specific finding, as to whether there was a genuine issue of fact regarding whether Plaintiff was performing his job duties at a level that met his employer's legitimate expectations. [*See* R&R. Doc. # 73, at 8–9.]

[3] The Fourth Circuit has held that the fourth prong may be satisfied upon showing that similarly-situated employees outside the protected class received more favorable treatment. *White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004). Plaintiff does not object to the magistrate's finding that Plaintiff failed to present sufficient evidence that non-African American employees falsified company information yet retained their employment. Thus, the Court agrees with the magistrate's finding on this point.

workload [4] . . . ." [Obj., Doc. # 74, at 7; *see also* Pl.'s Resp., Doc. # 62 (explaining that "Mark Bronson was given a lighter workload than" Plaintiff).] Accordingly, Plaintiff's own objections indicate that Mr. Bronson, who was already working for Defendant, assumed only some portions of Plaintiff's prior work- and there is no evidence in the record that any new employees were hired to assume the remaining portions of Plaintiff's work.[5] *See Bradford v. Conbraco Industr.*, No.: 4:08-cv-2085-RBH-TER, 2010 WL 1069543, *5, 8 (D.S.C. Feb. 12, 2010), adopted by Order dated March 3, 2010, Doc. # 53 (finding that Plaintiff did not establish the fourth element of her *prima facie* discriminatory discharge case, in part, because "Defendant did not hire anyone else to replace Plaintiff following her termination. Instead, Plaintiff's job duties were dispersed among existing employees."); Chambers v. E.W. James & Sons, Inc., No. 5:07-135, 2008 WL 3914969, *7 (E.D. Ky. Aug. 20, 2008) ("[E]ven if Chambers could demonstrate that she was disabled or perceived as disabled, there is no evidence that Chambers was 'replaced' by a non-disabled employee. After the termination of Chambers' employment, the duties of photo lab manager were taken on by Karen Dennis, an existing employee . . . .").

Plaintiff further objects to the magistrate's finding that, even assuming Plaintiff set forth a *prima facie* case, Plaintiff failed to raise an issue of material fact that the legitimate reason offered by Defendant was a pretext. [*See* Obj., Doc. # 74, at 7.] Plaintiff does not argue that Defendant did

---

[4] Plaintiff's claim tracks closely with Defendant's own assertion that "[Mr.] Bronson is a long-time existing employee who merely assumed some of Plaintiff's duties after Plaintiff's employment was terminated for falsification." [Def.'s Mot., Doc. # 63, at 7.]

[5] It appears that Plaintiff may also be trying to argue that Mr. Bronson was given a portion of Plaintiff's former route, and that, due to this "difference in treatment," discriminatory intent can be inferred. [Obj., Doc. # 74, at 7.] However, that Defendant spread the former duties of Plaintiff among the remaining employees is simply not a difference in treatment giving rise to discriminatory intent. *See, e.g., Webb*, 438 Fed. App'x at 454; *Bradford,* 2010 WL 1069543 at *5, 8.

6

not have a legitimate, nondiscriminatory reason for terminating Plaintiff – namely, falsifying company documents. [*See* Obj., Doc. # 74, at 7.] However, Plaintiff takes issue with the magistrate's finding that Plaintiff failed to show that the reason given for his termination was pretext. For both his Title VII and ADA claims, Plaintiff makes the same objection:

> Plaintiff has provided witnesses who state that falsifying documents was accepted and encouraged at times. Defendant has provided witnesses who state that it is understood that releasing packages early is a policy violation. Plaintiff does not deny that it is a violation on paper or per policy, which is what the witnesses state. However, the witnesses do not state whether or not releasing early, writing POD, or writing in breaks, was a practice they engaged in at times without punishment and with the knowledge of management.

[Obj., Doc. # 74, at 7.] This objection is without merit.[6]

First, in the affidavits offered by Plaintiff, no employee admits to falsifying documents. Moreover, even construed in a light most favorable to Plaintiff, the affidavits fail to allege a policy by Defendant encouraging employees to falsify documents in spite of the written policy. For instance, Alonzo Stephens' affidavit merely states that he "was require [sic] to put in POD[7] [sic] write in break." [Stephens Aff., Doc. # 62-1, at 1.] This affidavit, as the magistrate noted, is unclear. However, to the extent Mr. Stephens' affidavit can be read as saying his responsibilities included logging in breaks or deliveries into the company's system, it cannot reasonably be read as an admission that Mr. Stephens entered deliveries that were not made, or logged breaks that were never

---

[6] As for his Title VII claim, the record shows that not even Plaintiff believed he was the victim of racial discrimination. Although the Charge against Defendant indicates that Plaintiff was discriminated against because of his race, Plaintiff testified during his deposition that he did not agree that he was discriminated against on the basis of race. [*See* Pl.'s Charge, Doc. # 54-6; Pl.'s Dep., Doc. # 54-3, at 298:22–299:11.] In spite of this disagreement, Plaintiff claimed that an EEOC representative checked that box on the Charge. [*Id.*]

[7] From this Court's review of the record, the "POD" referenced in Mr. Stephens' affidavit apparently means "package on delivery." [*See* Pl.'s Dep., Doc. # 54-2, at 73:6–9.]

7

taken.[8] More importantly, Mr. Stephens' affidavit cannot be read as a declaration that Defendant had an unwritten company policy encouraging falsification. [*Id*.] *See also Robinson v. Clipse*, 602 F.3d 605, 607 (4th Cir. 2010) (noting that for summary judgment, all *reasonable* inferences mus be viewed in a light most favorable to the non-moving party).

Likewise, neither Karen Wilson's nor Duran Gripper's affidavits address any instance of falsification or state that it was an accepted practice to falsify documents or release packages early. [*See* Wilson Aff., Doc. # 62-2; Gripper Aff., Doc. # 62-3.] Plaintiff relies on the following statement in Ms. Wilson's affidavit as evidence that falsification was acceptable: "I also was told about a release number to use if I got behind on my delivery time especially a.m. packages, which were like critical deliveries." [Wilson Aff., Doc. # 62-2, at 2.] That Ms. Wilson was told by some unidentified entity about a release number to signify a late delivery does not amount to an allegation that company officials encouraged falsifying company documents and allowed packages to be electronically released if the couriers were behind on delivery times. Further, Ms. Wilson never alleges that she falsified a company document, that Defendant itself encouraged falsification, or that she ever used the release number she recalls being "told about." [*Id*.] Thus, even viewing the record in a light most favorable to Plaintiff, there is simply no evidence, other than Plaintiff's bald

---

[8] Critically, if Mr. Stephens' affidavit could be read as an admission to falsifying documents with the company's knowledge or pursuant to company policy, it would be further fatal to Plaintiff's Title VII and ADA claims. Mr. Stephens is an African-American male who, according to Plaintiff, also suffers from a speech impediment and was not fired for falsification. [*See* Pl.'s Dep., Doc. # 54-2, at 83:16–18, 157:1–10, 171:1–20.] Thus, if Mr. Stephens falsified company documents and was not terminated for doing so, Plaintiff has failed to provide evidence to establish that his termination had anything to do with his race or speech impediment. *See, e.g., Barbour v. Dynamics Research Corp*., No. 93–10221, 1994 WL 568877, at *2 (D. Mass. Sept. 7, 1994) ("In this instance, where other members of the protected class were not fired for the same behavior, [Plaintiff] has failed to present sufficient evidence that [Defendant's] proffered reason is pretextual.").

8

assertion, that Defendant had an unwritten policy allowing falsification of company documents.[9]

Second, Plaintiff has admitted that he was aware of Defendant's written "zero tolerance" policy regarding falsification of documents, and that he falsified documents in violation of this policy. [Obj., Doc. # 74, at 1.] Further, Plaintiff even described his policy violations as "inexcusable and unjustified" and "a lack in judgment," and he agreed that his misconduct warranted discipline. [*See* Obj., Doc. # 74, at 1; Pl.'s Dep., Doc. # 54-3, at 233:11–234:25, 236:13–23, 237:17–20, 248:11–21; Pl.'s Statement, Doc. # 54-17, at 5,6.] Given Plaintiff's own admissions of guilt, his agreement that punishment was warranted, and his inability to provide any reliable evidence[10] that falsifying documents was encouraged in spite of Defendant's explicit written policy, Plaintiff has failed to establish pretext as a matter of law. *See Riley v. Honeywell Technology Solutions, Inc*., 323 Fed. App'x 276, 278 (4th Cir. 2009) (holding that Plaintiff's "self-serving contentions" that he was treated unfairly "were properly discounted by the district court as having no viable evidentiary support and as being insufficient as a matter of law to establish pretext.").

## II.    ADA

Plaintiff's ADA claim is for disparate treatment, based on his claim that he was discriminated against on the basis of his speech impediment when he was terminated by the Defendant. Disparate treatment claims under the ADA are evaluated under the same standards as discrimination claims asserted under Title VII . *See Wright v. Stark Truss Co., Inc*., No. 2:10–2427, 2012 WL 3029638,

---

[9] As the magistrate notes, Defendant provided affidavits from dozens of employees who swore, under oath, that Defendant did not have a policy allowing falsification of documents, and that such actions were prohibited. [*See* R&R, Doc. # 73, at 12–13.] Plaintiff's affidavits do nothing to contradict these affidavits.

[10] Plaintiff did not object to the magistrate's holding that Plaintiff provided only unsupported hearsay to support the proposition that any other employee falsified company documents yet retained their position. [R&R, Doc. # 73, at 10–11.]

at *5 (D.S.C. May 10, 2012).

To establish a *prima facie* case for wrongful discharge on the basis of the ADA, a plaintiff must prove four elements: (1) he is within the ADA's protected class – that is, that he was a "qualified individual with a disability;" (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Day v. Morgan*, No. 3:10–cv–454, 2011 WL 3418521, at *4 n.1 (D.S.C. Aug. 3. 2011) (citing *Haulbrook v. Michelin N. Am., Inc*., 252 F.3d 696, 702 (4th Cir.2001)).

In his Objections regarding the ADA claim, Plaintiff again takes issue with the magistrate's holding that Plaintiff had failed to establish a *prima facie* case of discriminatory discharge under the ADA. [*See* Obj., Doc. # 74, at 5–6.] Plaintiff specifically objects to the magistrate's finding that Plaintiff fails to show he is a qualified individual with a disability. [*Id*.] The Court overrules this objection.[11]

Plaintiff argues that, contrary to the magistrate's findings, he was "regarded as" disabled under the ADA and that "[i]t is clear that Defendant employer regarded Plaintiff as an individual having an impairment that significantly restricted Plaintiff from equal treatment and advancement within the company." [Obj., Doc. # 74, at 5.] However, in support of this assertion, Plaintiff states that his speech impediment was "in plain view" and then disjointedly lists several unfair situation that befell him, including having used uniforms, getting laughed at when a customer asked that

---

[11] Even if this Court were to rule in favor of Plaintiff on this objection, he would still fail to make a *prima facie* case of discrimination under the ADA. The magistrate held that for purposes of Plaintiff's ADA claim, Plaintiff's discharge did not occur under circumstances that raise a reasonable inference of unlawful discrimination. [R&R. Doc. # 73, at 14.] Plaintiff filed no objections to this holding beyond his objections under Title VII. Accordingly, as discussed above, the Court agrees with the magistrate.

10

Plaintiff not deliver to her home, being on part-time status, and being teased by other employees who made Plaintiff repeat himself. [*Id.* at 5–6.]

However, as the magistrate noted, Plaintiff fails to present evidence sufficient to show that these working conditions somehow related to his speech impediment or that Defendant believed that the speech impediment substantially limited one or more of Plaintiff's major life activities. [R&R, Doc. # 74, at 16.] In fact, as highlighted by the magistrate, Plaintiff admitted that he had only every had one conversation with anyone at work about his supposed speech impediment, that his speech issues were "no big issue," and that his ADA claim is not based upon anything that he saw or heard, but instead it is simply a "feeling" that he has. [*Id.* (citing to various portions of the record).] "Plaintiff's feeling is insufficient to show that Defendant regarded him as having a disability." [*Id.* (citing *McClinton v. F. Schumacher & Co.*, No 04-738-22, 2004 WL 3591132, * 5 (D.S.C. Dec. 13, 2004) ("Such a belief on the part of Plaintiff, no matter how sincere or heart felt, is simply not evidence to support an ADA claim.").]

Even if the magistrate erred in finding that Plaintiff failed as a matter of law to establish a *prima facie* case, which he did not, Defendant would still be entitled to summary judgment on Plaintiff's ADA claim because Defendant had a legitimate nondiscriminatory reason for Plaintiff's termination. As discussed previously, for both his Title VIII and ADA claims, Plaintiff disagreed with the magistrate's finding that his termination was not pretext, and he lodged the same pretext objection under both claims. [Obj., Doc. # 74, at 7.] Again, this objection lacks merit because Plaintiff failed to provide any reliable evidence that falsifying documents was encouraged in spite of Defendant's explicit written policy, and Plaintiff admitted he had violated the policy and deserved disciplinary action. Plaintiff simply thought he deserved a punishment that was less severe.

**Conclusion**

The Court has thoroughly analyzed the entire record, including the R&R, objections to the R&R, and the applicable law. The Court has further conducted the required review of all of the objections and finds them without merit. For the reasons stated above and by the magistrate, the Court hereby overrules all of Plaintiff's objections and adopts the magistrate's R&R.

**IT IS THEREFORE ORDERED** that, pursuant to Federal Rule of Civil Procedure 56, Defendant's Motion for Summary Judgment [Doc. # 54] is **GRANTED**, and this case is **DISMISSED** with prejudice in its entirety.

**IT IS SO ORDERED**.

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
August 3, 2012